DECISION
{¶ 1} Relator, Carolyn Williams, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator temporary total disability ("TTD") compensation, and to order the commission to grant said compensation.
 {¶ 2} Pursuant to Civ.R. 53(D) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate found that relator was on notice that the status of her allowed psychological and physical condition was at issue in the hearing and that relator had the opportunity to present contrary medical evidence. In addition, the magistrate found that Dr. Lightbody's report was some evidence supporting the commission's determination that relator's psychological condition had reached maximum medical improvement ("MMI"). The fact that relator was not receiving TTD compensation for her psychological condition at the time Dr. Lightbody opined that her condition had reach MMI did not discredit his report.
 {¶ 3} Relator filed objections to the magistrate's decision arguing that the commission's decision exceeded the scope of the issues that were to be addressed at the district hearing officer's ("DHO") hearing of June 22, 2004 and the staff hearing officer's ("SHO") hearing of August 3, 2004. Relying on State exrel. Nestle USA-Prepared Foods Div., Inc. v. Indus. Comm.,
Franklin App. No. 01AP-1214, 2003-Ohio 413, relator argues she did not have notice that these hearings would address whether her psychological condition was at MMI. We disagree.
 {¶ 4} As noted by the magistrate, the notice at issue indicated that the hearing was to address the employer's request for termination of TTD compensation. Because the employer's motion also indicated the employer was relying upon medical reports which addressed both relator's physical and psychological claims, it was clear that the employer was seeking to eliminate TTD for the entire claim, even though relator was only receiving TTD for her physical claim at that time.
 {¶ 5} We also agree with the magistrate that these facts are substantially different from those before the court in Nestle.
In Nestle, the notice provided no indication that the hearing would address the claimant's recent motion for TTD compensation for her allowed psychological claim. In the case at bar, the notice was sufficient to apprise relator that the hearing would address both relator's physical and psychological claims. Therefore, the commission appropriately addressed whether relator was at MMI on her psychological claim. In turn, the commission appropriately relied upon its earlier MMI finding when it subsequently denied relator's request for TTD compensation for the psychological claim. Accordingly, we overrule relator's objections.
 {¶ 6} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
Petree and Brown, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio on relation of : Carolyn Williams, : Relator, : v. : No. 05AP-1293 St. Vincent Charity Hospital and The : (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on June 28, 2006 Shapiro, Marnecheck Reimer, Philip A. Marnecheck andJennifer Wilson, for relator.
Rademaker, Matty, McClelland Greve, Dennis A. Rademaker andMatthew P. Hawes, for respondent St. Vincent Charity Hospital.
Jim Petro, Attorney General, and Sue A. Zollinger, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 7} Relator, Carolyn Williams, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for temporary total disability ("TTD") compensation and ordering the commission to find that she is entitled to that compensation.
Findings of Fact:
 {¶ 8} 1. Relator sustained a work-related injury on December 24, 1997, and her claim was originally allowed for "sprain lumbosacral." Respondent St. Vincent Charity Hospital ("employer") further allowed relator's claim for the following additional conditions: "aggravation of pre-existing foraminal encroachment severe right side of L5-S1, moderate towards left side of L4-5 L5-S1 and mild to moderate towards right side of L4-5."
 {¶ 9} 2. Relator requested TTD compensation and by order of the district hearing officer ("DHO") dated November 15, 2001, TTD compensation was ordered paid from July 17 through November 15, 2001 and continuing. The DHO order was based upon the reports of Cynthia C. Bamford, M.D.
 {¶ 10} 3. In December 2001, relator filed an additional C-84 from Dr. Bamford certifying TTD compensation through an estimated return-to-work date of January 15, 2002. Relator also filed a C-86 motion requesting that her claim be amended to include the condition of depressive disorder NOS.
 {¶ 11} 4. An independent psychological evaluation was conducted by Walter Belay, Ph.D. In his January 28, 2002 report, Dr. Belay opined that there was a causal relationship between relator's injury and the development of a depressive disorder NOS. Therefore, the employer recognized the claim for the additional condition of "depressive disorder."
 {¶ 12} 5. In March 2002, relator filed another C-86 motion requesting that her claim be additionally allowed for "L5-S1 Disc Herniation." Relator attached the results of a December 7, 2001 MRI which showed some mild disc bulging at L4-5 and L5-S1. Relator also submitted the February 19, 2002 report of her treating physician, Juan Hernandez, M.D., who opined that the herniation was directly related to relator's industrial injury.
 {¶ 13} 6. The matter was heard before a DHO on June 5, 2002 and relator's claim was additionally allowed for the condition of L5/S1 disc herniation.
 {¶ 14} 7. The employer appealed and the matter was heard before a staff Hearing officer ("SHO") on July 23, 2002 and resulted in an order affirming the prior DHO finding that relator's claim should be additionally allowed for the disc herniation.
 {¶ 15} 8. In the meantime, TTD compensation continued to be paid to relator for her allowed physical conditions based upon subsequent C-84s completed by Dr. Hernandez certifying continued TTD.
 {¶ 16} 9. Relator was examined by Manhal A. Ghanma, M.D., who conducted an independent medical examination relative to relator's allowed physical conditions. In his August 29, 2003 report, Dr. Ghanma listed the allowed conditions, identified the medical evidence which was before him for review, provided his physical findings upon examination, and concluded that relator's allowed physical conditions had reached maximum medical improvement ("MMI"). Dr. Ghanma opined that relator's subjective complaints far outweighed his objective findings. Dr. Ghanma also indicated that the MRI findings relative to disc herniation were not substantiated, at this time, based upon his physical examination. Ultimately, Dr. Ghanma opined that, if relator declines surgery, then no further treatment is warranted.
 {¶ 17} 10. An independent medical examination relative to relator's allowed psychological condition was performed by Richard Lightbody, M.D. In his September 9, 2003 report, Dr. Lightbody concluded that relator's allowed psychological condition had not yet reached MMI and that her condition should improve emotionally when she develops a greater degree of functional activity. Furthermore, Dr. Lightbody opined that continuing psychotherapy was necessary and would relate to the outcome of her physical rehabilitation and potential re-entry into the job market.
 {¶ 18} 11. Dr. Lightbody prepared an addendum dated April 8, 2004 after reviewing the following documents:
1. A series of psychotherapy progress notes from Dr. Marian Chatterjee. These cover a period from 11-3-03 through 3-6-04, every two weeks except for a longer interval over the year-end holidays. The notes suggest good cooperation in treatment and good clinical improvement in mood. The focus seems to be on pain management and issues of daily living.
2. An orthopedist's IME dated 8-29-03. Manhal Ghanma, M.D., believed Mrs. Williams to be at MMI on that date, and seemed to suggest symptora maginification. He also states that her time off work is far in excess of what is expectable in the usual rehabilitation for her specific injuries. For instance, he writes, "Her subjective complaints far outweigh her objective findings."
After reviewing the above listed documents, Dr. Lightbody concluded that relator's allowed psychological condition had reached MMI and that further treatment did not appear to be necessary solely for the depressive disorder, but more for relator's other underlying and longstanding psychological issues. Dr. Lightbody explained his conclusions as follows:
It does not appear to me that Mrs. Williams has made an effort to address her vocational challenges. She seems preoccupied with maintaining herself in a debilitated life, with circumscribed opportunities and few pleasures. She appears to have made gains in therapy, and to be feeling less depressed, with a greater range of activities. For instance, "She spent time with the pastor's wife," on 3-6-04, and, "She told [husband] she would like to go out more often . . .", on 2-25-04. I realize that at times her pain is accentuated, and her depressed feelings at times increase.
My dominant impression is that the psychotherapy is based on maintenance, on underlying issues of characteralogic passivity, and on her current social milieu. I do not see a focus on increasing activity, or challenging herself to become functional.
Based on this conclusion, I see Mrs. Williams as working at maintaining a plateau in her emotional functioning. I believe that this constitutes Maximum Medical Improvement.
 {¶ 19} 12. Thereafter, the employer filed a motion requesting a hearing on the issue of the termination of relator's continuing TTD compensation based upon the medical reports of Drs. Ghanma and Lightbody.
 {¶ 20} 13. Notice was sent to the parties by the Ohio Bureau of Workers' Compensation ("BWC") indicating that the employer's request to terminate further TTD compensation was being submitted to the commission for consideration.
 {¶ 21} 14. In response, relator submitted the April 28, 2004 report of Dr. Hernandez issued after he reviewed the reports of Drs. Ghanma and Lightbody. Dr. Hernandez indicated that it was his opinion that relator had not yet reached MMI relative to her allowed physical conditions and noting that he was awaiting BWC approval for a TNS unit for relator. With regards to the April 2004 addendum of Dr. Lightbody, Dr. Hernandez specifically noted that Dr. Lightbody was contradicting his prior report of September 2003 and noted that Dr. Lightbody did not mention that relator's subjective complaints of pain and impairment have actually improved. As such, Dr. Hernandez opined that relator remained temporarily and totally disabled.
 {¶ 22} 15. Relator also submitted follow-up notes from Dr. Hernandez dated May 11 and June 8, 2004 indicating that relator was still awaiting approval from the BWC for the TNS unit.
 {¶ 23} 16. The employer's motion to terminate TTD compensation was heard before a DHO on June 22, 2004. Based upon the medical reports of Drs. Ghanma and Lightbody, the DHO concluded that all of relator's allowed conditions, both physical and psychological, had reached MMI and that relator's TTD compensation should be terminated.
 {¶ 24} 17. Thereafter, on July 7, 2004, relator filed a C-84 seeking the payment of TTD compensation based solely upon her allowed psychological condition as certified by Dr. Chatterjee.
 {¶ 25} 18. Relator's appeal from the prior DHO order finding that her condition had reached MMI and terminating her TTD compensation was heard before an SHO on August 3, 2004. The SHO affirmed the prior DHO's order as follows:
Staff Hearing Officer affirms the District Hearing Officer's decision finding maximum medical improvement. Dr. Ghanma's 08/29/2003 report indicates that injured worker has reached maximum medical improvement for the allowed physical conditions unless he has surgery for the disc. Dr. Lightbody's 04/08/2004 review indicates maximum medical improvement that the injured worker sees Dr. Chatterjee every two weeks and the psychotherapy based on maintenance, on underlying issues of characterologic passivity, and on her current social milieu. Temporary total disability compensation was properly terminated based on maximum medical improvement effective 06/22/2004, the date of the District Hearing Officer hearing, based on current Ohio case law.
 {¶ 26} 19. Relator's further appeal was refused by order of the commission mailed September 8, 2004.
 {¶ 27} 20. The BWC referred relator's request for TTD compensation from June 21, 2004 and continuing based upon the allowed psychological condition to the commission after the employer rejected relator's request.
 {¶ 28} 21. Relator's request for TTD compensation was heard before a DHO on October 4, 2004, and was denied as follows:
It is the order of the District Hearing Officer that the C-86 Motion filed by Injured Worker on 08/24/2004 is denied as the District Hearing Officer finds that, the 06/22/2004 District Hearing Officer order and the 08/03/2004 Staff Hearing Officer order both had findings of maximum medical improvement without exclusion given, relative to the allowed psychological condition in this claim. As evidence has not been presented of any new or changed circumstances occurring since those orders, the request for temporary total disability compensation from 06/21/2004 to date, relative to the allowed psychological condition, is denied.
 {¶ 29} 22. Relator's further appeal was heard before an SHO on December 1, 2004 and resulted in an order affirming the prior DHO's order in all respects.
 {¶ 30} 23. Relator's further appeal was refused by order of the commission mailed January 7, 2005.
 {¶ 31} 24. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 32} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law.State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28.
 {¶ 33} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. Stateex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewisv. Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 34} In this mandamus action, relator asserts that the commission abused its discretion in the following regards: (1) neither the report of Dr. Ghanma nor the report of Dr. Lightbody constitutes some evidence upon which the commission could rely in finding that her allowed physical and psychological conditions had reached MMI as those doctors' reports are unreliable; (2) the commission lacked jurisdiction to determine that her allowed psychological condition had reached MMI at the September 3, 2004 hearing before the SHO; and (3) the commission could not have found that her allowed psychological condition reached MMI because, at the time the commission rendered that decision, relator was not receiving TTD compensation based upon her allowed psychological condition. For the reasons that follow, the magistrate rejects relator's arguments.
 {¶ 35} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached MMI. See R.C. 4123.56(A); State exrel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630.
 {¶ 36} Relator first contends that the reports of Drs. Ghanma and Lightbody do not constitute "some evidence" upon which the commission could rely. With regards to Dr. Ghanma's report, relator contends that Dr. Ghanma did not accept that her claim had been allowed for all of the allowed physical conditions. Relator points out that Dr. Ghanma stated, in his report, that there was no evidence to support relator's ongoing complaints and that the MRI findings are not supported by clinical evidence upon physical examination. However, contrary to relator's arguments, this magistrate does not find these statements establish that Dr. Ghanma did not accept all of the allowed conditions in rendering his opinion.
 {¶ 37} First, Dr. Ghanma specifically noted all of the allowed conditions at the outset of his report. Second, Dr. Ghanma specifically addressed the fact that the MRI shows a disc herniation as well as the discussion that surgery may be an appropriate treatment option for relator in the future. Dr. Ghanma also noted that, based upon accepted guidelines, 95 percent of herniated discs which are not operated on resolve in approximately 112 days. A careful review of Dr. Ghanma's report leads to the conclusion that he did accept the allowed condition of L5/S1 disc herniation; however, he also believed that it had likely resolved, at this time, without surgical intervention. There is nothing inappropriate about a physician giving this type of opinion.
 {¶ 38} Relator also contends that Dr. Ghanma's report cannot constitute some evidence upon which the commission could rely because Dr. Ghanma stated in his report that he did not have all of Ben D. Ortega's, M.D., records before him to review. Relator cites State ex rel. Lampkins v. Dayton Malleable, Inc. (1989),45 Ohio St.3d 14, in support of her argument. In Lampkins, the court reiterated its holding from State ex rel. Wallace v.Indus. Comm. (1979), 57 Ohio St.2d 55, wherein the Supreme Court of Ohio held that a non-examining physician's report which does not indicate express acceptance of the findings of examining doctors does not constitute "some evidence" upon which the commission can rely.
 {¶ 39} Relator's citation to and reliance upon Lampkins is misplaced. First, Dr. Ghanma is not a "non-examining physician." The record is clear that he actually examined relator at his office. As such, Dr. Ghanma was not required to accept the findings of Dr. Ortega in issuing his opinion. Second, a review of Dr. Ghanma's report makes it clear that he did examine reports from Dr. Ortega. In fact, at the outset of his report, Dr. Ghanma indicates that his file review took approximately two hours. The magistrate finds that it was not necessary for Dr. Ghanma to have every office note that Dr. Ortega had ever made as part of his review regarding his physical examination of relator. For those reasons, relator's argument fails.
 {¶ 40} Relator also contends that the report of Dr. Lightbody cannot be relied upon by the commission because Dr. Lightbody changed his opinion six months after his first report. Relator is correct that following his September 2003 independent medical examination, Dr. Lightbody did indeed conclude that, in his opinion, relator had not reached MMI for her allowed psychological condition and that he believed she would improve emotionally when she was able to reach some greater degree of functional activity. Dr. Lightbody prepared an addendum in April 2004 after being provided with a series of psychotherapy progress notes from Dr. Chatterjee covering the period of November 3, 2003 through March 6, 2004 as well as Dr. Ghanma's independent medical examination dated in August 2003. Based upon his review of Dr. Chaterjee's progress notes, Dr. Lightbody noted that relator has had an improvement in mood, that she has made gains in therapy, and is feeling less depressed as she participates in a greater range of activities. Dr. Lightbody pointed to two references in Dr. Chatterjee's notes to support his statement.
 {¶ 41} While it is undisputed that a medical report which is equivocal cannot be relied upon by the commission, the magistrate finds that Dr. Lightbody's addendum is not equivocal. In the six months from his first evaluation, relator appeared to have been doing some of the things which Dr. Lightbody had specifically indicated would help her psychological condition improve, namely, getting more involved in activities she enjoys. Dr. Lightbody pointed out that relator had spent time with the pastor's wife in March 2004, and that in February 2004, she told her husband that she would like to get out more often. Dr. Lightbody fully explained why he had changed his opinion and that opinion is supported by the evidence. His report simply is not equivocal and the magistrate rejects this argument of relator.
 {¶ 42} Relator also contends that the commission did not have jurisdiction to decide that her allowed psychological condition had reached MMI at the August 3, 2004 hearing because the commission's order does not specifically list the allowed psychological condition in the first paragraph indicating the conditions for which her claim had been allowed. Furthermore, relator argues that the commission could not find her psychological condition to have reached MMI when she had never even requested the payment of TTD compensation based upon that condition. These arguments will be addressed together.
 {¶ 43} Relator cites State ex rel. Nestle USA — PreparedFoods Division, Inc. v. Indus. Comm., Franklin App. No. 01AP-1214, 2003-Ohio-413 in support; however, although relator contends that the Nestle case is directly on point, this magistrate disagrees.
 {¶ 44} In Nestle, the claimant's claim had been allowed for certain physical conditions and TTD compensation was granted. A year later, the commission found that the claimant's claim should be additionally allowed for major depression. Later that same year, the claimant filed a C-84 requesting TTD compensation for her allowed psychological condition. Thereafter, the employer filed a motion seeking to terminate the claimant's TTD compensation based upon the fact that her own physician had released her to light duty. Notice was mailed to the parties informing them that a hearing was to be held on the employer's request to terminate TTD compensation and the extent of disability.
 {¶ 45} The matter was heard before a DHO and the employer's request to terminate TTD compensation was denied. The DHO based that decision upon the finding that the employer had failed to make a formal offer of light-duty employment to the claimant. Thereafter, the DHO ordered that TTD compensation should be continued based upon the claimant's C-84 filed in regards to her allowed psychological condition. Although the employer appealed and the matter was heard before an SHO, the decision to award further TTD compensation based upon the claimant's psychological condition was affirmed.
 {¶ 46} The employer pursued a mandamus action in this court on the issue of whether the commission had jurisdiction to award TTD compensation based upon the allowed psychological condition. This court held that the commission did not have the jurisdiction because the notice sent prior to the hearing only addressed the employer's motion to terminate TTD compensation. The notice did not inform the parties that the subject matter of the hearing would include claimant's motion for TTD compensation based upon her allowed psychological condition.
 {¶ 47} Relator cites the following paragraph from theNestle decision:
Procedural due process, as it applies to administrative hearings before the commission, includes the right to reasonable notice of hearing as well as a reasonable opportunity to be heard. State ex rel. Finley v. Dusty Drilling Co. (1981),2 Ohio App.3d 323 * * *; State ex rel. B.F. Goodrich Co. v. Indus.Comm. (1991), 73 Ohio App.3d 271 * * *. Reasonable notice of hearing includes the right to reasonable notice of the subject matter of the hearing. Id.
Id. at ¶ 111.
 {¶ 48} In Nestle, the commission's notice apprised the parties that the subject matter was (1) the request to terminate TTD compensation, and (2) the extent of disability/MMI. Notice did not include the issue of claimant's recent motion for TTD compensation based upon her allowed psychological condition.
 {¶ 49} The present case differs significantly from theNestle case. In the present case, the employer had secured two medical reports relative to all of relator's allowed conditions, both physical and psychological. The notice given indicated that the hearing was regarding the termination of TTD compensation. Further, the employer's motion indicated that the employer was relying upon the medical reports of Drs. Ghanma and Lightbody. In response, relator submitted a new report by Dr. Hernandez wherein he gave his opinion as to why the reports of Drs. Ghanma and Lightbody should not be relied upon by the commission. Relator could have submitted additional psychological evidence; however, she did not. Nevertheless, relator was on notice that the status of her allowed psychological physical condition was directly at issue in the hearing and relator had the opportunity to present contrary medical evidence. The magistrate finds that this argument of relator lacks merit as well.
 {¶ 50} Relator also contends that the commission abused its discretion by finding that her allowed psychological condition had reached MMI when she had never requested TTD compensation based upon this condition. However, relator cannot cite any case law and simply relies upon her previous argument that the report of Dr. Lightbody does not constitute "some evidence" upon which the commission could rely.
 {¶ 51} Both the Ohio Revised Code and the Ohio Administrative Code provide for medical examinations of claimants receiving workers' compensation benefits. As such, there was nothing improper about relator being sent to Dr. Lightbody for an independent medical examination relative to her psychological condition as her claim had been allowed for depressive disorder. Dr. Lightbody not only examined claimant, but also reviewed records which were submitted to him. Following the September 2003 examination, Dr. Lightbody opined that relator had not reached MMI. However, in April 2004, after being provided with additional medical evidence, Dr. Lightbody opined that relator had, at that time, reached MMI with regard to her allowed psychological condition.
 {¶ 52} MMI, in and of itself, is defined as "a treatment plateau (static or well-stabilized) at which no fundamental functional or psychological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures." There is no reason why Dr. Lightbody could not have concluded that relator's allowed psychological condition had reached a treatment plateau at which no fundamental psychological change could be expected within reasonable medical probability in spite of the fact that he believed that she needed continued supportive treatment. The fact that relator was not already receiving TTD compensation at the time that Dr. Lightbody opined that her condition had reached MMI does not in any way discredit his report. Furthermore, as stated previously, claimant had the opportunity to submit evidence from Dr. Chatterjee on this issue but she failed to do so. The commission found Dr. Lightbody's opinion to be credible and found that relator's allowed psychological condition had reached MMI. The fact that relator had not yet requested TTD compensation for her allowed psychological condition is immaterial.
 {¶ 53} After the commission found that her allowed psychological condition had reached MMI, relator filed a motion seeking the payment of TTD compensation based upon her allowed psychological condition based upon a C-84 completed by Dr. Chatterjee. Relator did not submit a report with her motion. Essentially, the commission found that relator failed to meet her burden of proving that her allowed psychological condition caused her any disability. The commission found that Dr. Lightbody's prior finding that she had reached MMI constituted some competent, credible evidence and relator failed to overcome this burden. Upon review of the record, the magistrate finds that the commission did not abuse its discretion in finding that her allowed psychological condition had reached MMI at the time of the hearing before the SHO in August 2004 as relator had notice that the matter was before the commission and had a copy of Dr. Lightbody's report. Furthermore, the magistrate finds that the commission did not abuse its discretion thereafter in denying her motion for TTD compensation based upon the allowed psychological condition.
 {¶ 54} Based on the foregoing, the magistrate finds that relator has not demonstrated that the commission abused its discretion and relator's request for a writ of mandamus should be denied.